## THE STATE v. OLDEN McQUITTY, Appellant.

### Division Two, November 14, 1911.

SELF-DEFENSE: Instruction: Conflicting: Imminent Danger.  It is sufficient under the law, to support the plea of self-defense, that defendant had reasonable cause to believe, and did believe, that danger existed and was impending at the time he struck the fatal blow.  An instruction which tells the jury they "must believe and find from the evidence that the defendant had reasonable cause to apprehend and did apprehend that Carlos was about to inflict upon him some great bodily harm, and that such danger was imminent and impending," standing alone, might be construed to mean that the jury must find that the danger was imminent and impending; but when read in connection with an instruction given for defendant, declaring that "neither is it necessary that defendant's danger should have been real or actual, or that it should have been impending or about to fall, but if he had reasonable cause to believe and did believe," etc., it could not have misled the jury, and the two are not in conflict.

Appeal from Boone Circuit Court.—*Hon. N. D. Thurmond*, Judge.

AFFIRMED.

*Elliott W. Major*, Attorney-General, and *John M. Dawson*, Assistant Attorney-General, for the State.

The instructions are full, fair and complete. They leave it to the jury to determine whether or not the knife used by appellant was a deadly weapon.  No complaint is made to the instructions in the motion for new trial, except as to instruction 1 on the part of the State upon murder in the first degree, and that

No. 4 on the part of the State, is in conflict with No. 1 on the part of appellant, and because all of the eleven instructions given for the State were erroneous. Appellant cannot be serious in these objections to the instructions, as the court will find, upon a perusal of each and every instruction given, that they fully cover the evidence, and that when the instructions are taken as a whole they fully cover the law under the evidence in the cause. They are so full, fair and complete that we do not deem it necessary to comment on each instruction and cite authorities in support thereof. State v. Baker, 209 Mo. 444; State v. Daly, 210 Mo. 664.

FERRISS, J.—Under an indictment charging him with murder in the first degree, for the killing of Earnest Carlos, defendant was convicted of the crime charged and sentenced to life imprisonment in the penitentiary. He appeals from the judgment.

The evidence for the State, elicited from numerous eye-witnesses, tended to prove the following facts:

On the evening of May 22, 1909, the defendant, deceased and five companions, William and Newland Dysart, Mort and Porter Strawn and W. E. Murray, were in Woodlandville, a small town in Boone county. On the north side of a street in said town was a store, and on the south side, nearly opposite said store, was a barber shop. Some fifteen or twenty feet east of the store was a stile leading from the street to a plank sidewalk. It was, dusk; the lamps were lighted in the store and shone through a door located at the southeast corner of the store. About eight o'clock that evening defendant McQuitty came out of the barber shop mentioned, and said, "Somebody is going to have to make a skidoo from here pretty damn quick." He crossed the street to the stile, around which the deceased and the other young men named were sitting or standing. The deceased made a bet

of seventy-five cents with defendant that he could not make seven in the first throw of dice, and the money was placed in the hands of William Dysart. It was then discovered that none of the boys had any dice with them; so the money was returned to the owners by the stakeholder. Then the defendant left the stile, walked out in the street, and said, "Come here, Carlos; I want to see you." The deceased walked towards the defendant, and, when within a few feet of him, was heard to say, "What in the hell are you doing with that knife in your hand?" Just then the defendant struck the deceased over the eye with his knife. All the young men present heard the "lick," and Newland Dysart saw defendant strike the deceased with his knife. The deceased called Mort Strawn to him, saying, "that nigger has stuck a knife in me," and asked Strawn to pull the knife out. An effort was made to extract the knife, but without avail. The knife was the size and style of what is known as the Barlow knife, with a blade between two and a half and three inches in length. The blade had penetrated the skull and brain as far as the handle would permit. Defendant ran away after striking the blow. The deceased was laid on a cot in the barber shop, and a physician, Dr. Halsey, summoned. The doctor, with the assistance of others, removed the knife with a pair of blacksmith's tongs, the deceased at the time being in a semi-conscious condition. Deceased lingered until the first day of July, 1909, when he died from the effects of the wound.

Defendant, testifying in his own behalf, admitted that he struck the deceased with his knife. He testified that he walked away after the betting incident, and that when he was about opposite the southeast corner of the store Carlos called to him, saying, "Hold on there a minute;" that he turned around and saw deceased coming towards him, cursing; that deceased asked him if he had any whiskey,

and upon his answering that he had not, deceased said he was a G—— d—— liar; that he again started to walk away when deceased said, "Hold on there—I want you anyhow, G—— d—— you;" that deceased, with his hand thrown back, kept coming towards him, and that he then struck deceased with his knife; that he could not tell whether or not the deceased had anything in his hand, and that he struck the deceased to keep him from hurting him; that he never had any trouble with Carlos before, did not intend to kill him, and that his aim was to strike him on the arm.

There was no other material evidence given for the defense. The witnesses for the State all told substantially the same story, which was uncontradicted save as appears from the testimony of the defendant.

The defendant is not represented in this court, but he was defended by able counsel in the court below. The court instructed the jury on murder in the first degree, murder in the second degree, manslaughter in the third degree, and self-defense, and the instructions as a whole were favorable to the defendant. He had the benefit of an instruction on manslaughter in the third degree, although the testimony properly confined the case to murder in the first and second degrees, and self-defense.

Instruction numbered 4 for the State reads as follows:

"The court instructs the jury that before they can acquit the defendant upon the ground of self-defense, you must believe and find from the evidence that the defendant had reasonable cause to apprehend and did apprehend that Earnest Carlos was about to inflict upon him some great bodily harm, and that such danger was imminent and impending, and unless you so believe you will find the defendant guilty and

assess his punishment as provided in these instructions."

Defendant in his motion for a new trial asserts that this instruction conflicts with instruction numbered 1 given for defendant, which reads thus:

"The court instructs the jury that if you find and believe from the evidence that defendant had good reason to believe, from the words, acts and conduct of Earnest Carlos, that said Carlos had a design to do defendant some great personal injury or bodily harm, and that defendant had reasonable cause to believe there was imminent danger that such design was about to be accomplished, then defendant had a right to act on appearances, and to cut or stab said Carlos to prevent the accomplishment of such design, even though such cut or stab resulted in the death of said Carlos.

"In this connection you are further instructed that the law did not require the defendant to retreat or to wait until said Carlos actually attacked him, nor was the defendant required to nicely gauge the force used, but that he could use any means for his own protection that appeared reasonably necessary under the circumstances; neither is it necessary that defendant's danger should have been real or actual, or that it should have been impending or about to fall, but if he had reasonable cause to believe, and did believe, these facts, and cut and stabbed said Carlos to prevent such expected harm, then you must acquit defendant on the ground of self-defense, even though you may believe that said Carlos did not intend to do the defendant any personal injury or bodily harm."

If instruction numbered 4 for the State stood alone, there might be some ground to claim that it could be construed to mean that the jury must find that the danger to the defendant was in fact imminent and impending. Taking the instructions together,

however, the jury could not be misled, and must have understood from the instructions that it was sufficient under the law, to support the plea of self-defense, to find that defendant had reasonable cause to believe, and did believe, that the danger existed and was impending.

The record evidence discloses a cruel, wanton, cold-blooded murder, without a single extenuating circumstance, and the defendant might well deem himself fortunate in having escaped capital punishment for his inexcusable crime.

Finding no reversible error in the record, the judgment is affirmed. *Kennish, P. J.,* and *Brown, J.,* concur.